Filed 7/14/25  Conservatorship of the Person of C.S. CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| Conservatorship of the Person of C.S. | C102321 |
| TEHAMA COUNTY PUBLIC GUARDIAN, as Conservator, etc., | (Super. Ct. No. 24PR000115) |
| Petitioner and Respondent, | |
| v. | |
| C.S., | |
| Objector and Appellant. | |

C.S. appeals from an order issued after a bench trial appointing a conservator over her person and estate under the Lanterman-Petris-Short Act (LPS Act) pursuant to Welfare & Institutions Code section 5000 et seq.[1] C.S. contends the order should be

---

[1]  Further undesignated statutory references are to the Welfare and Institutions Code.

1

reversed because she did not knowingly and intelligently waive her right to a jury trial. We conclude the jury trial waiver was invalid, and therefore we will reverse the order.

## FACTS AND PROCEEDINGS

*Petition and Pretrial Proceedings*

On August 1, 2024, the Tehama County Public Guardian (public guardian) filed a petition for appointment of temporary and permanent conservator of the person and estate of C.S. The public guardian filed a conservatorship investigation report along with the petition. The report detailed C.S.'s history of mental illness and medication noncompliance, and confirmed that "[t]here is no one, at this time, willing or able to offer [C.S] assistance to live independently in the community," and "[t]here are no viable alternatives to conservatorship at this time." On August 9, C.S. was served with a citation for conservatorship and the petition; the citation stated, "You have the right to a jury trial if you wish." On August 15, the public guardian filed the citation.

On August 26, a hearing was held regarding the petition; C.S. was not present. During the hearing, C.S.'s court-appointed counsel stated: "Your Honor, [C.S.] is requesting a court trial with no time waiver." Based on counsel's representation, the trial court set a bench trial for September 18.

In a hearing held on September 3, county counsel moved to set the trial for a different time on the same date due to its expert's limited availability. When the request was brought, C.S.'s counsel stated: "I am happy to hear what County Counsel has to say, but I cannot change -- agree to change any date to a later date without discussing it with my client," noting that C.S. had not issued a time waiver.

On September 9, at a hearing for trial resetting, C.S.'s counsel confirmed that she spoke with C.S. about the upcoming trial set for September 18: "[The matter] was continued a week for me to talk to my client. [¶] She is not waiving time. So at this time we're not agreeable to a continuance or a motion." Counsel added, "I believe [C.S.]

2

is going to be in Tehama County Court tomorrow morning for a separate matter and that might change how we proceed on her LPS matter."

The September 18 bench trial was confirmed on September 16. The court granted C.S.'s counsel's request that C.S. be personally present at trial.

*Bench Trial*

On September 18, 2024, trial court held the bench trial. C.S. was present at trial, but the court did not advise her of her right to a jury trial, and her right to a jury trial was not otherwise mentioned.

A licensed clinical psychologist testified that she twice evaluated C.S. before trial and reviewed records related to C.S.'s mental and physical health. The psychologist opined that C.S. was gravely disabled by unspecified schizophrenia, recommended conservatorship, and recommended the public guardian as C.S.'s conservator.

C.S. testified that at the time of trial she was living in a convalescent hospital, but she did not like it there. She stated that she lived with her husband in a trailer under the Tehama Bridge. She denied having schizophrenia, denied problems taking her medication, and stated that she did not want to be conserved or remain living in the convalescent hospital. If she were not conserved, she would not go back to living under the bridge because the trailer had been destroyed in a hit and run accident in a parking lot. Instead, she would buy another vehicle to live in and to use to get to doctors' appointments, get food stamps because she had Social Security disability income, go shopping with her daughter, cook in her camp trailer, get clothing from Wal-Mart, and earn money from her sno-cone business. She added that her husband lived in a homeless shelter, and he did not want to get back together with her.

The trial court found C.S. to be gravely disabled, and imposed a conservatorship with an expiration date of September 18, 2025.

Defendant timely filed notice of appeal. The case was fully briefed in May 2025 and assigned to the current panel the following month.

3

**DISCUSSION**

C.S. contends reversal is required because the trial court did not advise her of her right to a jury trial, and she did not personally waive her right to a jury trial.[2] We agree.

"The LPS Act governs the involuntary detention, evaluation, and treatment of persons who, as a result of mental disorder, are dangerous or gravely disabled. ([Welf. & Inst. Code,] § 5150 et seq.) The Act authorizes the superior court to appoint a conservator of the person for one who is determined to be gravely disabled ([*id.*,] § 5350 et seq.), so that he or she may receive individualized treatment, supervision, and placement ([*id.*,] § 5350.1)." (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142.) A proposed conservatee has "the right to demand a court or jury trial on the issue of whether the person is gravely disabled." (Welf. & Inst. Code, § 5350, subd. (d)(1).) Further, the LPS Act incorporates Probate Code section 1828, subdivision (a)(6), which provides that "the court shall inform the proposed conservatee of . . . [¶] . . . [¶] . . . the right . . . to have the matter of the establishment of the conservatorship tried by jury[.]" (See also *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 908 (*C.O.*) [interpreting Prob. Code, § 1828, subd. (a)(6) as "requir[ing] a trial court to personally advise a proposed conservatee of [their] jury trial right"].)

The right to a jury trial in LPS Act commitment proceedings may be waived. There is a split of authority on whether a trial court must obtain a personal, on-the-record waiver of the jury trial right. (*K.R. v. Superior Court* (2022) 80 Cal.App.5th 133, 143;

_____

[2] We deny C.S.'s motion to strike portions of the public guardian's brief, but we disregard the portions of the brief that refer to an unpublished opinion. (See Cal. Rules of Court, rule 977(a) [unpublished opinion "shall not be cited or relied upon by a court or party in any other action or proceeding"]; *People v. Webster* (1991) 54 Cal.3d 411, 428, fn. 4 [quoting rule 977(a)].)

compare *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378, 383-384 [holding such a waiver required], with *C.O.*, *supra*, 71 Cal.App.5th at p. 913 [holding that, absent certain circumstances, counsel may validly waive proposed conservatee's jury trial right].) However, the decisions agree "that a trial court must personally advise a person of the statutory right to a jury trial in LPS proceedings." (*K.R.*, at p. 143; see Prob. Code, § 1828, subd. (a)(6); Welf. & Inst. Code, § 5350.)

Here, it is undisputed that the trial court never advised C.S. of her right to a jury trial.[3] C.S.'s counsel requested a bench trial on August 26, 2024, but C.S. was not present at that hearing. At trial, which C.S. attended, the court did not advise C.S. of her right to a jury trial or ask her if she waived that right.

We need not address whether the trial court erred by accepting C.S.'s counsel's waiver of C.S.'s right to a jury trial because we conclude the court's failure to personally advise C.S. of that right was prejudicial, and therefore requires reversal. While the acceptance of a proposed conservatee's waiver of the right to a jury trial " 'without an express advisement may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the . . . waiver was knowing and voluntary' " (*C.O.*, *supra*, 71 Cal.App.5th at p. 918, quoting *People v. Blackburn* (2015) 61 Cal.4th 1113, 1136), here the totality of the circumstances does not establish a knowing and voluntary waiver.

In *C.O.*, the appellate court concluded that C.O.'s waiver was knowing and voluntary on the basis that he was mailed a citation explaining his right to a jury trial, his

---

[3] The court in *C.O.* recognized, like here, that C.O. was advised of his right to a jury trial by service of a citation. (*C.O.*, *supra*, 71 Cal.App.5th at p. 909.) The court concluded that advisement was not sufficient to satisfy the requirement that *the court* shall inform the proposed conservatee of the right to a jury trial. (*Ibid.*; see Prob. Code, § 1828, subd. (a)(6).) The court concluded the language in Probate Code section 1828, subdivision (a)(6) "reflect[ed] a legislative intent to 'judicially ensure' the proposed conservatee has knowledge of his or her right to a jury trial." (*C.O.*, at p. 909.)

counsel informed him of his right to jury trial, he was present at the hearing when his counsel stated that he wished a " 'court trial,' " and he communicated with his counsel about how he wished to proceed. (*C.O.*, *supra*, 71 Cal.App.5th at pp. 918-919.) The *C.O.* court distinguished *Heather W.* on the basis that in *Heather W.*, the record was effectively silent about whether the proposed conservatee had been informed of the right to jury trial, whereas in *C.O.*, the proposed conservatee had been informed of his right to a jury trial both in writing and by counsel. (*Id.* at p. 919.) Further, the proposed conservatee in *C.O.* "did not express any disagreement or indicate that his counsel's express statement that he wanted a court trial was contrary to his wishes." (*Ibid.*)

Here, the only evidence supporting C.S.'s knowing and voluntary waiver was the citation, which provided written notice of her right to a jury trial, and her counsel's brief statement that "[C.S.] is requesting a court trial with no time waiver." But unlike in *C.O.*, C.S. was not present when her attorney waived her right to a jury trial, and counsel provided no details about her conversation (if any) with C.S. to establish that counsel had informed C.S. of her right to a jury trial, or that C.S. had expressed her desire to waive that right. We note that counsel's statement that "[C.S.] *is requesting* a court trial" (italics added) was not sufficient to demonstrate that counsel had informed C.S. of her right to a jury trial and that counsel was relaying C.S.'s knowing and voluntary decision to waive a jury trial. Rather, as C.S. points out on appeal, it is common practice for attorneys to state their clients' requests or positions on various issues although the client himself or herself had not personally expressed that preference.

Because the totality of the circumstances does not establish C.S.'s knowing and voluntary waiver of her right to a jury trial, the trial court's failure to expressly advise

C.S. of her right to a jury trial cannot be deemed harmless.  (*C.O.*, *supra*, 71 Cal.App.5th at p. 918.)  Accordingly, we reverse the trial court's order.[4]

## DISPOSITION

The order granting the petition for an LPS Act conservatorship is reversed.

/s/
Duarte, J.

We concur:

/s/
Robie, Acting P. J.

/s/
Renner, J.

---

[4]  C.S. also argues on appeal that the trial court's imposition of a disability on her was not supported by substantial evidence, and the trial court abused its discretion by failing to consider appointing a family member as the conservator.  Because we reverse the trial court's order, we need not and do not reach those issues.